# K<small>ATZ</small>M<small>ELINGER</small>

370 L<small>EXINGTON</small> A<small>VENUE</small>, S<small>UITE</small> 1512
N<small>EW</small> Y<small>ORK</small>, N<small>EW</small> Y<small>ORK</small> 10017
www.katzmelinger.com

Katherine Morales
Katz Melinger PLLC

t: 212.460.0047
f: 212.428.6811
kymorales@katzmelinger.com

April 4, 2023

**<u>Via ECF</u>**
The Honorable Michael A. Shipp
Clarkson S. Fisher Building & U.S. Courthouse
402 E. State Street
Trenton, New Jersey 08608

    Re:   *<u>Henry Macal v. Citron Inc. et al.</u>*
            <u>Civil Action No. 3:22-cv-4684 (FLW)(DEA)</u>

Your Honor:

       We are attorneys for the Plaintiff, Henry Macal ("Plaintiff"), and write jointly with counsel for defendants, Cirton Inc. d/b/a Conte's Pizza ("Conte's Pizza"), and Ciro Baldino (collectively, "Defendants") to seek approval of the parties' agreement to settle Plaintiff's claims, which include claims for overtime violations pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a(4) ("NJWHL"); failure to timely pay wages pursuant to the New Jersey Wage Payment Law ("NJWPL"); and fraudulent filing of information returns under 26 U.S.C. § 7434.

       Plaintiff and Defendants write to respectfully request that the Court approve the settlement agreement between them, a copy of which is attached hereto as **Exhibit 1**, and allow them to discontinue the matter with prejudice pursuant to Fed. R. Civ. P. 41 (a)(2).

       **1.**  **<u>Summary of Plaintiff's Claims</u>**

       Plaintiff was employed by Defendants as a cook from in or around January 2008 until on or around May 22, 2021. As a cook, Plaintiff's principal job duties included preparing pizza dough, preparing pizza, preparing sandwiches, and assembling boxes for orders.

       From the start of his employment until in or around February 2020, Plaintiff alleges that he regularly worked seven (7) days per week, as follows: Mondays from approximately 9:00 a.m. until 9:00 p.m.; Tuesdays through Thursday from approximately 9:00 a.m. until 11:00 p.m.; Fridays from approximately 8:00 a.m. or 9:00 a.m. until 11:00 p.m., Saturdays from approximately

Honorable Michael A. Shipp
April 4, 2023
Page 2

10:00 a.m. until 11:00 p.m.; and Sundays from approximately 4:00 p.m. until 9:00 p.m., for a total of approximately eighty-six (86) hours per week.

From in or around March 2020 until in or around May 2020, Plaintiff alleges that he worked six (6) days per week, as follows: Mondays through Saturdays from approximately 10:00 a.m. until 6:00 p.m., for a total of approximately forty-eight (48) hours per week.

From in or around June 2020 until in or around February 2021, Plaintiff alleges that he regularly worked seven (7) days per week, as follows: Mondays from approximately 9:00 a.m. until 9:00 p.m.; Tuesdays through Fridays from approximately 9:00 a.m. until 10:00 p.m.; Saturdays from approximately 10:00 a.m. until 10:00 p.m.; and every other Sunday from approximately 9:00 a.m. until 3:00 p.m., for a total of approximately seventy-nine (79) hours per week.

Lastly, from in or around March 2021 until the end of his employment, Plaintiff alleges that he regularly worked seven (7) days per week, as follows: Mondays from approximately 9:00 a.m. until 4:00 p.m., Tuesdays through Thursdays from approximately 9:00 a.m. until 5:00 p.m., Fridays and Saturdays from approximately 9:00 a.m. until 11:00 p.m.., and every other Sunday from approximately 9:00 a.m. until 3:00 p.m., for a total of approximately sixty-one (61) hours per week.

Although Plaintiff regularly worked in excess of forty (40) hours per week, Defendants failed to pay him overtime wages at a rate of 1.5 times his hourly rate of pay for all hours worked in excess of forty (40) per week. Specifically, Plaintiff alleges that he was paid at a rate of $11.00 per hour for all hours worked per week from in or around April 2009 until in or around May 2018; at a rate of 12.00 per hour of all hours worked per week from in or around June 2018 until in or around December 2019; and at a rate of $15.00 per hour for all hours worked per week from in or around January 2020 until in or around May 2021.

Additionally, Plaintiff alleges that Defendants provided him with his wages partially in cash, without any withholdings for federal, state, and local taxes, and partially in check with withholdings for federal, state, and local taxes. Throughout the tax years of 2010 to 2020, Plaintiff alleges that Defendants issued Internal Revenue Service ("IRS") W-2 Forms to him that only reflected the wages Defendants paid to Plaintiff via check during each such year. As a result, Plaintiff alleges that Defendants willfully filed false information returns with the IRS as to Plaintiff's wages in violation of 26 U.S.C. § 7434.

Based on the foregoing, Plaintiff estimates that he is owed approximately $23,374.50 in unpaid overtime wages, plus liquidated damages, interest, the costs of this litigation, and reasonable attorneys' fees. Plaintiff also estimates that he is owed $30,000.00 in damages for fraudulent filing of information returns under 26 U.S.C. § 7434.

### 2. Defendants' Position

Defendants deny plaintiff's allegations as to the number of hours that he worked, and the amount of and manner of compensation that he was paid. Defendant Cirton's time and payroll records support the defendants' defenses to certain of plaintiff's allegations.

The parties engaged in extensive settlement discussions and agreed to settle Plaintiff's claims for $70,000.00 to be paid to Plaintiff in one lump-sum payment shortly after the Court's approval of the parties' settlement agreement. The amount agreed upon reflects a mutual desire to reach an amicable resolution in this matter without additional litigation.

As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

**The Proposed Settlement Should Be Approved**

1. The Settlement Resolves Bona Fide Disputes and is Fair and Reasonable to Plaintiff

To approve an FLSA settlement agreement in the Third Circuit, the court must determine whether "the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Davis v. Essex Cty.*, 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015) (internal quotations and citations omitted). "In determining whether the compromise resolves a bona fide dispute, the Court must be reassured that the settlement 'reflect[s] a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching,' and the bona fide dispute must be determined to be one over 'factual issues' not 'legal issues such as the statute's coverage or applicability.'" *Brumley v. Camin Cargo Control, Inc.,* 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (citations omitted). District courts in the Third Circuit typically consider the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975) in determining whether a FLSA settlement is fair and reasonable. *Cruz v. JMC Holdings, Ltd.*, 2019 WL 4745284, at *4 (D.N.J. Sept. 30, 2019). Those factors are:  "...(1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation ...." *Id.* (citing *Girsh*, 521 F.2d at 157).

The proposed settlement agreement reflects a reasonable compromise of bona fide disputes regarding Plaintiff's claims, rather than a mere waiver of statutory rights brought about by Defendants' overreaching. Here, there is no doubt that the settlement did not come about because of "overreaching" by Defendants. To the contrary, Plaintiff is represented by competent counsel, and the settlement amount $70,000.00 results in a recovery to Plaintiff of $46,178.67*,* after expenses and proposed attorneys' fees.  This sum is fair and reasonable given the early stage at which the settlement was reached; the time and costs associated with continued ligation; the risk

that Plaintiff would not prevail on all of his claims after a trial; and the fact that Plaintiff will receive the entire settlement amount shortly after the Court's approval of the settlement agreement.

Moreover, the parties have engaged in extensive negotiations and exchanged information relevant to the claims and defenses in this matter; and can therefore accurately assess the strengths and weaknesses of the asserted claims and their respective positions. *Cruz*, 2019 WL 4745284, at *5 (concluding that the parties appreciated the merits of the case because, *inter alia*, the parties engaged in informal discovery of relevant documents and various arm's-length negotiations). Although the parties hold opposing views on the merit and value of Plaintiff's claims, the arm's length bargaining between such represented parties weigh in favor of finding the settlement reasonable.

2. The Settlement Furthers the Implementation of the FLSA

As further explained above, Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims. By reaching a settlement with Defendants, Plaintiff avoids the risks of either receiving an unfavorable outcome in this matter or, if Plaintiff prevails in his claims, attempting to enforce a judgment. Furthermore, the agreement provides that Plaintiff will receive the entire settlement amount in one lump sum payment shortly after the Court's approval of the proposed settlement agreement, which is highly favorable to Plaintiff.

Lastly, the proposed settlement agreement is devoid of any provisions that would frustrate the implementation of the FLSA. Specifically, the proposed agreement does not contain a confidentiality provision, and Plaintiff's release of claims is limited to the claims asserted in in the instant action. *Cruz*, 2019 WL 4745284, at *7 (finding that the proposed agreement did not frustrate the purposes of the FLSA where the agreement did not contain a confidentiality provision and the release was limited to claims asserted in the lawsuit).

3. Plaintiff's counsels' fees are reasonable

Plaintiff and his counsel maintain that the proposed amount of attorneys' fees is also fair and reasonable. "[T]he percentage-of-recovery method has been accepted as an established approach to evaluating the award of attorneys' fees in the Third Circuit." *Brumley*, 2012 WL 1019337, at *9. Under the percentage-of-recovery method, fee awards ranging from 19 percent to 45 percent of the settlement fund have been deemed reasonable. *Id.* at *12; *see also, Davis*, 2015 WL 7761062, at *5. Under the proposed agreement, Plaintiff's counsel would recover $732.00[1] as reimbursement for costs and expenses, and $23,089.33 in fees. Under Plaintiff's contingency fee agreement, Plaintiff's counsel is entitled to recover out of Plaintiff's settlement amount, fees totaling one-third of any amounts recovered on behalf of Plaintiff, as well as costs and expenses, which is reasonable. *Brumley*, 2012 WL 1019337, at *12 ("Counsel's request for one-third of the settlement fund falls within the range of reasonable allocations in the context of awards granted in other, similar cases").

---

[1] The costs and expenses are as follows: $402.00 for the filing fee and $330.00 for process server costs, for a total of $732.00.

Moreover, a lodestar crosscheck also supports Plaintiff's counsel's fee request. As indicated by Plaintiff's counsel's time records, attached hereto as **Exhibit 2**, Plaintiff's counsel has spent a total of 66.9 hours on this matter as follows: Kenneth Katz, 4.6 hours; Nicole Grunfeld, 4.1 hours; Katherine Morales, 31.1 hours; Nicola Ciliotta, 4.9 hours; and Jonathan Trinidad-Lira 22.2 hours. Plaintiff's counsels' hourly rates - $575.00, $525.00, $375.00, $375.00 and $300.00, respectively – are reasonable based on their experience and are in line with the rates charged by attorneys in this district. *Santiago v. Lucky Lodi Buffet Inc.*, 2016 WL 6138248, at *4 (D.N.J. Oct. 21, 2016) (approving an hourly rate of $450.00 per hour for a law firm partner and $375.00 per hour for an associate with approximately 4 years of employment law experience); *see also*, *Jian Zhang v. Chongqing Liuyishou Gourmet NJ Inc*, 2019 WL 6318341, at *4 (D.N.J. Nov. 26, 2019) (approving an hourly rate of $550.00 per hour for a law firm partner); *see also, Punter v. Jasmin Int'l Corp.,* 2014 WL 4854446, at *7 (D.N.J. Sept. 30, 2014) (approving an hourly rate of $300.00 per hour for an associate with "over two years of litigation experience and a substantial portion of his practice relates to representation of employment matters").

Mr. Katz is the founding member and managing partner of Katz Melinger PLLC ("Firm"), a boutique firm established in 2012. Mr. Katz earned his B.S. in 2000 from the State University of New York at Albany, and his J.D. in 2003 from Hofstra University School of Law, with an award recognizing his achievements in the employment law field. Mr. Katz was admitted to the Bar of the state of New York in 2004, and his practice is focused primarily on litigation, with substantial experience handling wage and hour matters.

Ms. Grunfeld is a partner at the Firm, where she has worked for more than nine years. She earned her B.A. in 1998 from Yale University, and her J.D. in 2004 from New York University School of Law. Ms. Grunfeld was admitted to practice in the courts of New York in 2005 and New Jersey in 2018, and has focused on plaintiff's employment matters for more than fifteen years. She currently serves as Vice President of the Board of the New York chapter of the National Employment Lawyers' Association.

Ms. Morales is an associate at the Firm. Ms. Morales earned her B.B.A. from Pace University in 2014 and her J.D. from Georgetown University Law Center in 2017; she was admitted to practice in New York in 2018 and New Jersey in 2020. Prior to joining the firm in 2017, Ms. Morales worked on various employment law matters while maintaining part-time positions with private law firms, universities, and nonprofits. Ms. Morales focuses her practice exclusively on employment law matters.

Mr. Ciliotta is a former associate of the Firm. Mr. Ciliotta earned his B.A. from Vanderbilt University in 2015 and his J.D. from Penn State Law School in 2018, and was admitted to practice in New York in 2019. Mr. Ciliotta joined the Firm in 2018 and focused his practice exclusively on employment law matters during his time with the Firm. Mr. Ciliotta left the Firm on November 5, 2021.

Mr. Trinidad-Lira is a law clerk at the Firm, having earned his B.A. from Fordham University in 2019 and his J.D. from Seton Hall University School of Law in 2022. Mr. Trinidad-

Lira has focused his practice on employment law since joining the Firm in August 2022 and was admitted to the New Jersey Bar in October 2022.

The $23,089.33 fee sought by Plaintiff's counsel is less than Plaintiff's counsel's "lodestar" amount of $24,957.50, and is therefore reasonable. *Davis,* 2015 WL 7761062, at *5 (finding that a lodestar crosscheck supported counsel's fee request as the lodestar amount exceeded the fee sought by plaintiff under their agreement); see also, *Brumley,* 2012 WL 1019337, at *12. As set forth herein, Plaintiff's counsel negotiated a highly favorable settlement for Plaintiff, in which Plaintiff recovered above the overtime wages claimed by Plaintiff. Furthermore, Plaintiff avoided the risk of attempting to enforce a judgment against Defendants, if Plaintiff ultimately prevailed in his claims.

Accordingly, Plaintiff and Defendants respectfully request judicial approval of their proposed settlement agreement, and further request permission to submit a stipulation of discontinuance with prejudice consistent with the requirements of Fed. R. Civ. P. 41(a) (2).

Respectfully submitted,

By: */s/ Katherine Morales*
    Katherine Morales, Esq.
    Katz Melinger PLLC
    370 Lexington Avenue, Suite 1512
    New York, New York 10017
    T: (212) 460-0047
    F: (212) 428-6811
    kymorales@katzmelinger.com
    *Attorneys for Plaintiff*

By: */s/ Brian J. Duff*
    Brian J. Duff, Esq.
    Kalavruzos, Mumola, Hartman, Lento & Duff LLC
    2681 Quakerbridge Rd
    Hamilton, New Jersey, 08619
    T: (609) 853-5579
    F: (609)-586-9404
    bduff@kmhlawyers.com
    *Attorneys for Defendants*